DIONISIO TRIGO, demandante y apelado, *v.* DR. M. JULIÁ y DR. ESTEBAN A. GOENAGA, demandados y apelantes.

Núm. 7220.—*Sometido:* Mayo 21, 1937. *Resuelto:* Mayo 26, 1937.

*Juan B. Soto, Juan F. Soto* y *Enrique Igaravídez,* abogados de los apelantes; *R. Díaz Collazo,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA emitió la opinión del tribunal.

Es ésta una acción sobre cumplimiento de contrato que tiene por base un convenio consignado en la siguiente comunicación dirigida por los demandados al demandante:

"San Juan, P. R.—Diciembre 4, 1930.—Sr. Dionisio Trigo, San Juan, P. R.—Muy señor nuestro y amigo: En relación .con el convenio suscrito por usted a la Saldaña Crosas Realty Corporation para el canje de los bonos de dicha corporación que usted posee, por los de la nueva emisión, nos complacemos en hacer constar que ha sido convenido entre nosotros que, en el caso de que tuviera usted necesidad de disponer de los bonos de la nueva emisión en cualquier momento, nos dará aviso, con plazo de treinta días, dentro del cual compraremos a usted los referidos bonos canjeados por su valor por más los intereses que correspondan.—Vale (firmado) Dr. E. A. Goenaga.—De usted Attos. y Ss. Ss., (firmado) Dr. M. Juliá.—(firmado) Dr. Esteban A. Goenaga."

Se alega en la demanda que en distintas ocasiones el demandante ha requerido a los demandados para que cumplan con la obligación anteriormente transcrita, dándoles el con-

venido plazo de treinta días, y que el requerimiento más reciente tuvo lugar el día 6 de febrero de 1934, por carta que dirigió el demandante a cada uno de los demandados y que ellos recibieron por conducto del correo certificado. Se hace constar que el demandante tiene en su poder a disposición de los demandados los bonos a que se refiere la obligación aquí transcrita y que los intereses devengados durante el semestre de primero de julio a 31 de diciembre de 1934 no fueron pagados y se adeudan por la Saldaña Crosas Realty Corporation, así como los intereses que corran desde el día 31 de diciembre de 1934 en adelante.

Se alega además que no obstante los requerimientos hechos, especialmente el último, que tuvo lugar en 6 de febrero de 1934, los demandados no han cumplido con la obligación contraída.

En la contestación se acepta el contrato celebrado entre las partes, pero se alega que en 13 de junio de 1932 el referido contrato fué rescindido a virtud de convenio celebrado entre el demandante y los demandados en 6 de junio de 1932 o alrededor de esa fecha. En dicho día el demandante convino con los demandados que si éstos solicitaban y obtenían de la corporación Saldaña Crosas Realty Corporation que ésta resolviera asegurar sus propiedades contra incendio en alguna de las compañías aseguradoras en que estaba interesado el demandante, el contrato aludido quedaría rescindido inmediatamente después que la corporación adoptase tal resolución. Continúan los demandados alegando que la referida corporación, por voto unánime de sus directores, adoptó en 13 de junio de 1932 la siguiente resolución que fué comunicada al demandante:

"*Primero:* Que la Saldaña Crosas Realty Corporation hace constar su agradecimiento a los Sres. Goenaga y Juliá, por su desinteresada actitud al haber suscrito la carta de diciembre 4 de 1930, a favor del Sr. Trigo y para beneficio de esta corporación.

"*Segundo:* Que se aprueba y ratifica el convenio celebrado con el Sr. Trigo, al efecto de que darán al Sr. Trigo los seguros de la cor-

poración, según vayan venciendo las pólizas, quedando mediante dicha entrega de pólizas relevados los señores Goenaga y Juliá de toda responsabilidad en cuanto a la ameritada carta del 4 de diciembre de 1930.

"*Tercero:* Que el Tesorero dirija carta a los Sres. M. Y. Saldaña & Company, Agentes de Seguros que tienen en la actualidad a su cargo los riesgos de las propiedades de la Corporación, para que se abstengan de renovar las pólizas que venzan en adelante, y cuyos seguros pasarán al Sr. Trigo, en cumplimiento de este acuerdo."

La corte inferior dictó sentencia condenando a los demandados Esteban A. Goenaga y Mario Juliá solidariamente a comprar al demandante Dionisio Trigo los diez bonos de la corporación Saldaña Crosas Realty Co., Inc., con los intereses reclamados en la demanda.

De esta sentencia apelaron los demandados, alegando como primer motivo de error el pronunciamiento de la corte inferior declarando sin lugar la excepción previa de falta de causa de acción. No sabemos los argumentos que se adujeron ante la corte sentenciadora en apoyo de esta excepción. Entienden los demandados que la obligación en este caso es condicional, toda vez que en el primer párrafo de la carta dirigida al demandante se hace constar lo siguiente:

"Nos complacemos en hacer constar que ha sido convenido entre nosotros que, en el caso de que tuviera usted necesidad de disponer de los bonos de la nueva emisión en cualquier momento, nos dará aviso, con plazo de treinta días, dentro del cual compraremos a usted los referidos bonos canjeados por su valor. . ."

Se arguye que esta obligación está sujeta a la condición de que el demandante tuviera necesidad de disponer de los bonos, no bastando con que quisiera vender los mismos, ya que el concepto de necesidad es distinto del concepto de querer, queriéndose muchas cosas que a veces no se necesitan y necesitándose a veces algunas que no se quieren.

La demanda es, a nuestro juicio, clara. En ella se alega que el demandante ha requerido en distintas ocasiones a los

.demandados para que cumplan con la obligación anteriormente transcrita, dándoles el convenido plazo de treinta días. No creemos que se haya omitido alegación esencial alguna. Los hechos aducidos bastan para establecer una causa de acción, sobre todo cuando de acuerdo con la misma demanda los demandados no han cumplido con la obligación contraída.

Si de la demanda pasamos a la prueba, nos encontramos con que no aparece de los autos que en momento alguno los demandados plantearan ante la corte inferior la cuestión de que el demandante no tuviese necesidad de disponer de los fondos. Tampoco se menciona este particular en la contestación a la demanda. Como ya hemos dicho, los demandados se limitan a decir que el contrato fué rescindido ·en virtud de un convenio verbal, posteriormente celebrado. Sin embargo, como se trata de una excepción previa, prescindiremos de la prueba, declarando que la demanda aduce hechos suficientes para constituir una causa de acción y que el tribunal inferior no cometió el error que se le atribuye.

Se alegan además cuatro motivos de error que en realidad constituyen uno solo. Estos supuestos errores se basan en manifiesto error en la apreciación de la prueba, en que se aplicó el criterio de·la duda en vez de aplicar la preponderancia de la evidencia, en que el fallo es contrario a la misma y en que no debió dictarse sentencia en contra de los demandados.

El tribunal inferior hace una relación detallada de la prueba aportada, que analiza cuidadosamente, expresándose en los siguientes términos:

"De un lado tenemos un documento suscrito por los demandados en el cual consta la obligación que les exige el demandante. Del otro tenemos las declaraciones de los demandados, tendientes a probar un contrato oral posterior al alegado por el demandante y que según ellos lo rescinde.

"¿Es suficiente la prueba de los demandados, teniendo en cuenta todas las circunstancias de este caso, para probar el contrato verbal que alegan en oposición al escrito del demandante?

"Cuando el demandante y los demandados celebraron el contrato de 4 de diciembre de 1930, estos últimos por su propia iniciativa o quizás a requerimiento del demandante, estimaron conveniente formalizar por escrito lo pactado y así lo hicieron suscribiendo la carta de 4 de diciembre de 1930 que entregaron al demandante y se transcribe en la demanda. Se trataba de un contrato cuya causa o consideración ascendía a $10,000 y dada su importancia, la razón y la práctica comercial exigían que se formalizase por escrito. Se trató más tarde, según los demandados, de dejar sin efecto el contrato de 4 de diciembre de 1930 y conforme alegan los demandados, el demandante les propuso y ellos aceptaron el alegado convenio o contrato de 6 de junio de 1932. Este segundo contrato era tan importante para los demandados como lo fué para el demandante el de 4 de diciembre de 1930, pues si en aquél se constituía una obligación por un valor de $10,000 a favor del demandante, en éste se cancelaba tal obligación en beneficio de los demandados. Sin embargo, a pesar de la importancia del contrato de 6 de junio de 1932 en ningún momento se ocuparon los demandados de que el mismo se formalizase por escrito. Por el contrario, recibieron varias cartas, del demandante unas y de sus abogados otras, reclamando el cumplimiento del contrato de 4 de diciembre de 1930, y aunque en algunas de ellas se les suplicaba que contestasen por escrito, en ningún momento tuvieron a bien acceder a las súplicas del demandante, no alegando por escrito sus derechos nacidos del alegado contrato de 6 de junio de 1932. Tal parece como si el demandante se esforzase en que sus derechos apareciesen por escrito mientras los demandados se empeñaban en mantener ocultos los suyos, pues contrario a la práctica corriente en los negocios, cuando recibían una carta del demandante o sus abogados, en vez de contestarla por escrito se tomaban el trabajo de ir en persona a la oficina del demandante o sus abogados para contestar oralmente las cartas que recibían.

". . . . . . . .

"La prueba de los demandados en este caso no es la prueba robusta, clara y convincente que en estos casos exige la jurisprudencia. No existe el más ligero indicio de evidencia escrita que pueda dar luz en este asunto, a pesar de las múltiples oportunidades que tuvieron los demandados para contestar siquiera las cartas del demandante y sus abogados insistiendo en la existencia de su alegado contrato. Tampoco existe declaración alguna de personas extrañas a los demandados que por su condición de neutrales pudieran merecer algún crédito a la corte.

"Con su conducta los demandados más bien que repudiar parecían aceptar los derechos que en sus cartas reclamaban el demandante y sus abogados. El acta de la sesión extraordinaria de la Junta de Directores de Saldaña Crosas Realty Co. constituye evidencia de que al celebrarse el contrato de 6 de junio de 1932, si es que se celebró, los demandados cumplieron con la parte que les incumbía, pero no es evidencia de la celebración del contrato mismo que alegan ahora los demandados, pues en dicho documento no intervino para nada el demandante, y por consiguiente no le obligan las manifestaciones que contiene con respecto a la existencia del contrato.

"El hallarse en poder de los demandados los impresos de solicitudes de pólizas que presentaron en evidencia, es una circunstancia que muy poca o ninguna luz arroja sobre la existencia del alegado contrato. El demandante explicó cómo y por qué razón fueron entregados los impresos a los demandados, y si éstos estimaron conveniente conservar tales impresos para utilizarlos como evidencia del alegado contrato, ¿por qué no procuraron obtener alguna evidencia escrita del demandante, evidencia que hubiera sido más persuasiva para el tribunal, ya que estos impresos nada dicen sobre el alegado contrato, y su valor probatorio sólo se reduce a la mera inferencia que pueda deducirse del hecho de encontrarse tales impresos en poder de los demandados? Tampoco nos impresiona la circunstancia de haberse entregado al Sr. Soto Gras una copia del acta de la sesión extraordinaria que celebró la Saldaña Crosas Realty Co., Inc., pues como antes dijimos, este documento no prueba la existencia del contrato, toda vez que el demandante no es parte en el mismo, y su entrega al Sr. Soto Gras sólo implica que en la fecha en que se entregó, relativamente reciente, los demandados como ahora descansaban en ese documento para probar un contrato cuya existencia en ningún momento aparece de la evidencia que la hayan aceptado ni el demandante ni sus abogados.

"De la prueba documental del demandante y los demandados surge una circunstancia que perjudica considerablemente a los demandados. Alegan éstos que su contrato verbal se celebró el 6 de junio de 1932 o alrededor de esa fecha. Del acta de la sesión extraordinaria de la Saldaña Crosas Realty Co. aparece que la convocatoria para dicha sesión tuvo efecto el 7 de junio de 1932. Por consiguiente, el contrato en que descansan los demandados no pudo celebrarse después del 7 de junio, fecha en que ya la referida corporación tenía conocimiento del mismo y había convocado para la junta extraordinaria en que había de considerarse dicho contrato. Del

*exhibit* A del demandante aparece que el mismo 6 de junio de 1932, fecha en que alegan los demandados se celebró el contrato oral, el demandante exigía el cumplimiento de su contrato de 4 de diciembre de 1930. De manera que, mientras los demandados alegan que el 6 de junio se rescindió el contrato de 4 de diciembre de 1930, el demandante para esa fecha está exigiendo terminantemente el cumplimiento del mismo contrato.

"El *Exhibit* A del demandante literalmente dice así:

" 'Sobrinos de Izquierdo, Inc.—San Juan, P. R.—6 de junio de 1932.—Dres. Esteban Goenaga y Mario Juliá, San Juan, P. R.— Estimados amigos: Les confirmo mi carta de 3 de mayo y cual en la misma les pedía, suplico a ustedes me contesten por escrito.

" 'Hace varias semanas estuvo a visitarme el amigo don Esteban de Goenaga, pero compromisos que tengo contraídos me obligan a confirmarle mi carta referida, y pendiente de vuestra favorable contestación, se reitera su afmo. s. s. (Fdo.) D. T.

" 'Dr. Goenaga, Allen 87, San Juan,—Dr. Juliá, Parada 29½, Hato Rey, P. R.'

"Del *exhibit* A antes transcrito fácilmente se infiere que el demandado Dr. Goenaga estuvo a verle en relación con la obligación de 4 de diciembre de 1930 (no aparece de la evidencia que el demandante y los demandados tuvieren algún otro negocio que no sea el que es objeto de este pleito) y que el demandante quedó considerando una proposición de los demandados cuando les dice:

" 'Hace varias semanas estuvo a visitarme el amigo don Esteban de Goenaga, pero compromisos que tengo contraídos me obligan a confirmarle mi carta referida, y pendiente de vuestra favorable contestación. . .'

"De suerte que, cualquier esperanza que hubieren abrigado los demandados en relación con lo tratado en la entrevista a que la carta se refiere, quedó desvanecida definitivamente por la carta de 6 de junio de 1932. El mismo día o un día después de recibida esta última, fué que se reunió la junta de Directores de Saldaña Crosas Realty Co. para considerar la proposición que según los demandados les hiciera el demandante.

"Ninguna evidencia existe por parte de los demandados que contradiga o en alguna forma explique la coincidencia de haberse escrito esta carta el mismo día en que alegan ellos se celebró el contrato. La carta es incompatible con el contrato que alegan los demandados, y si fué anterior al mismo, aunque escrita el mismo día, debiera existir alguna explicación por parte de los demandados,

que tienen el *onus probandi*, demostrativa de la causa del cambio operado en el demandante al rescindir o novar una obligación cuyo cumplimiento estaba exigiendo aquel mismo día 6 de junio en la forma tan clara y terminante que aparece del texto de la carta.''

El análisis que de la prueba hace la corte inferior se ajusta con acierto a la evidencia aportada. No vemos que se haya cometido error manifiesto en la apreciación de la misma. Tampoco aparece que el tribunal sentenciador haya actuado movido por pasión, prejuicio o parcialidad, y, por lo tanto, tratándose de una cuestión de hecho, creemos que *debe confirmarse la sentencia apelada.*